Pettibone v. WB Music Corp. Good morning, Your Honor. Good morning, Mr. Bush. May it please the Court. My name is Richard Bush, and I represent Robert Pettibone and his publishing company, Lexor Music. I know Your Honors have read the briefs. I will just say to begin with that the review here is de novo. I believe it's important to set up the legal basis on which indemnification clauses are construed in New York law. Under the law, very clearly, the language must clearly require indemnification from its language and context. There must be sufficiently clear language to show that the intent of the parties was to cover indemnification. And they are strictly construed, especially when it comes to fees, because the notion that fees are awardable to their side run against the public policy. What generated these royalties? Explain just how the stream of money went. The stream of money, the revenue and the royalties came from sales of the musical composition, Vogue, that was written by Mr. Pettibone. So this could be artists who cover it, television, commercials? It could be a synchronization license where it's shown on television. It could be sales of the musical composition, Vogue.  It could be all those types of things. Okay. And what is the split between Warner and your client? I believe it's a co-publishing deal, Your Honor, where they both split the royalties, I believe, equally. Fifty-fifty. Yes. Okay. So, Your Honor, with those principles in mind . . . Why don't you tell us what's unclear about the sentence that's the key to this case in the Section 8 of the Agreement on A-26. In addition, your indemnity shall extend to the deductible under our errors and omissions policy without regard to judgment or settlement. Why is that unclear? It's unclear for a lot of reasons, Your Honor. First of all, every case that analyzes whether claims or allegations are subject to indemnification clause say, by their language, that your indemnification applies to claims and to allegations. That's not here. Secondly . . . Claims and allegations. Claims or allegations. Without regard to judgment or settlement, does it accomplish that? Of course not. It would say, for example, that your indemnification applies to claims or allegations. It wouldn't say without regard to judgment or settlement. Furthermore, if Your Honor looks at paragraph 7.1, the last sentence of 7.1 . . . But there was a judgment here, right? There was a judgment against the plaintiff. We won the case. So there was no . . . In order for claims or allegations to be covered by the indemnification clause . . . It was a frivolous lawsuit. It went to judgment before the district court and then was appealed to the Ninth Circuit. How is that frivolous? We won on summary judgment. Right. And we won before the Ninth Circuit. But the Ninth Circuit removed the attorney's fees. Removed the attorney's fees based on their analysis of what the standard for application of attorney's fees were. The case was dismissed. The case was without merit. The case was thrown out. Putting the attorney's fees aside on the Ninth Circuit, you won this case. We won this case. So to answer Your Honor's question, though, you can't read one sentence in isolation in a contract like this. And here's where the problem comes in. It's written as a riddle. It's written as mental gymnastics. So the first sentence of paragraph 8.1 says that with respect to breach . . . You will indemnify us with respect to breach. The breach is if your written composition infringes on another musical composition. That's not the case. So there was no breach. So it says that it applies with respect to breach that results in a judgment or settlement. And it mentions . . . It contemplates your client or someone similarly situated bringing a composition or a song or whatever to Warner. And some third party says, look, hey, this is plagiarized. This is my song. Sues, gets a judgment, which would be presumably against both your client and Warner. Presumably. But here, again, very important, and I only have a limited amount of time. I think this is very important for me to say. You have to look at the three sentences in context. First sentence says that you indemnify us with respect to breach inclusive of attorney's fees and costs that result in a judgment or settlement. The second sentence says, in addition, your liability will extend to the limits of our deductible. It doesn't mention attorney's fees and costs. It doesn't mention without regard to breach. It says without regard to judgment or settlement. It doesn't say without regard to breach. It would have been very easy for them to say . . . Why would they need to say breach if there was no breach established here? Because if you're going to hold someone liable for indemnification without a breach, you need to say so. You need to say that in the document. You need to say your indemnification applies to claims or allegations. The first sentence says with respect to breach. The second sentence says nothing about breach. It doesn't say without regard to breach at all. And then the third sentence is very crucial also. The third sentence says . . . What does the third sentence say? That you have the right to receive notice of a claim against the other and to retain counsel of your own choice at your sole cost and expense. You cannot reconcile the third sentence with the first two. Because if the third sentence meant that you have to . . . There's no circumstance in the third sentence under which you . . . That Mr. Pettybone would not owe indemnification. The third sentence becomes irrelevant. Can I ask you about something else too? Yes. It talks about a deductible here for the errors and omissions policy that applies. Yes. We all know it was a retention . . . Exactly, Your Honor. . . . provision in the policy that applied during the time of the litigation in the district court and up to the Ninth Circuit. Do you still maintain that there's a difference between retention and deductible? I know the district court in a footnote said there wasn't any. Absolutely. That's another problem that we have. How is it different then? A retention and deductible . . . And we submitted the declaration of Ty Sagalow, which the district court completely ignored. And it was inappropriate to consider the policy with the retention language without considering the declaration of Mr. Sagalow. You can't just consider one side's evidence and not the other. And with regard to . . . May be answer Judge Droney's . . . Yes. As Mr. Sagalow says in his affidavit, a deductible is one in which the insured pays from the beginning. Whereas a retention is payable by the insured . . . by the insurance company from day one. And they have different consequences. And all of that is explained . . . What are the different consequences, though? It just means the insured's on the hook for that amount. And the insurance company only covers the portion above that, whether it's retention or deductible. What's the difference? Well, as Mr. Sagalow says, the deductible reduces available limits of liability while the retention does not. And Mr. Sagalow explains in his affidavit at paragraph 38 the consequences of those two different . . . the retention and the deductible. And by the way, deductible is in quotes in paragraph . . . in the second sentence. It's not . . . there's a reason why it's in quotes. It is just inappropriate to . . . you have to read this all together. Warner knew how to write language in their contract that says that the indemnification applies to claims or allegations. It's in paragraph 7.1 on something completely irrelevant in the last sentence. They also say it in paragraph 8.2. They don't say it here. And there is no case that I have found which applies indemnification . . . requires indemnification . . . without specific language saying that you will provide indemnification for claims or allegations. Not this mental gymnastics that is going on here in three sentences that you cannot reconcile. Thank you, Your Honor.  And you've reserved two minutes for rebuttal. Mr. Kaplan. Thank you, Your Honor. May it please the Court. With all due respect to Mr. Bush, we are reading the contract as a whole. There are three key sentences in section 8.1. And if we read them all together, they clearly and unambiguously mean that Mr. Pettibone has to indemnify my client in this situation. Now, the indemnity is for . . . you all won this lawsuit. Correct, Your Honor. And as you started down that road, it was clear from the provisions in the agreement that each side is going to bear its own . . . each side retains its own counsel at its own cost. Well, I . . . Right? No, I don't think that's correct, Your Honor. If you're referring to the third sentence in section 8.1, each counsel would bear its own cost . . . Anticipated in the defense by counsel of its own choice at its sole cost and expense. Before we get to any fee shifting, once this suit starts, people are bearing their own costs, right? Well, we're bearing our own costs in the sense that my client is paying . . . Warner is cutting you a check. Right, they are paying my firm to represent them, but they were . . . And you're saying that the next provision authorizes a fee shifting in the nature of an indemnification. That's basically your argument, right? Well, section 8.1, the first sentence says that Mr. Pettibone will have to indemnify Warner in the event that there is a breach that results in a judgment or a settlement. The second sentence . . . The clear implication of that, to me, is that if . . . that means if you lose the case. Your reading of that is that this provision applies if you get a judgment in your favor? The second sentence says that regardless of whether there is a judgment or a settlement, Mr. Pettibone has to indemnify Warner up to the deductible, up to the amount of money that Warner itself would have to pay before its insurance kicks in. So what we have here is if there's a lawsuit and it is proven . . . That seems to me a very . . . a somewhat tortured reading of that . . . of those two sentences. And where it seems to me you fall off the table is that under New York law, if there is going to be an indemnity that shifts fees, it has under New York law to be unmistakably clear. And this is not unmistakably clear. This is as garbled as you can imagine. And hidden within this language is quite an extraordinary provision. That if the two of us are sued and we win, I've got to pay my co-defendant's insurance . . . my co-defendant's attorney's fees. Now, that may be a result you want, but under New York law, that has to . . . it's very unusual. I've never seen anything like this before, at least like the interpretation that you're arguing for this. And it's . . . explain to me why this is not . . . can possibly meet the test of being unmistakably clear. Your Honor, the test in a third-party indemnification case is not the unmistakably clear standard. That is the test in a first-party indemnification case. In other words, where there's a litigation between two parties, a defendant and a plaintiff . . . and the loser is saying . . . I'm sorry, the winner is saying the loser has to pay. This is a third-party indemnification case. And the law is very clear. The cases are Luna and DiPerna. Both parties cite to them that say that the standard should not be confused in a third-party indemnification case . . . with a first-party indemnification case. The standard is simply that it has to be sufficiently clear. In other words, it's the same standard in a third-party indemnification case. That's when you're reading any contract. Now, the law in New York has got to be unambiguous. Correct, Your Honor. The law is that it's got to be unambiguous. The Bradley case . . . And your position is that there's no ambiguity in these two sentences? Well, Your Honor, what unambiguous means when we're . . . I know what unambiguous means. It's at your position that there is no ambiguity in the juxtaposition of these two sentences. That is our position, Your Honor. I think you can read sentence one, sentence two, and sentence three . . . and take away that there is no question that even . . . You can read it ten times and kind of understand your position. But, I mean, I spent a lot of time with this language and I kind of see what you mean. But, I don't understand how any reasonable counsel can claim this stuff is unambiguous. Well, if Your Honor would permit, I could explain it. And here's the problem that your approach leads to. You get a suit from someone who is sort of dissatisfied with the success of this property, the royalties that it's generating, and you can get . . . You know, we see these from time to time. You get all kinds of frivolous allegations in addition to a breach of contract. Somebody throws in a RICO claim. Somebody throws in this kind of claim. And Warner goes out and hires, you know, Sullivan and Cromwell, a proscour. And the bills are $75,000 a month. And then the suit is dismissed, you know, 12B6 or something like that. And then all of a sudden, on language that seems to me not to anticipate it, your co-party, the artist is stuck with enormous legal fees. That's essentially what's going on here. Well, Your Honor, if I could say two things. First of all, there's no way to read that second sentence without it meaning something. And Mr. Bush has no explanation for what the words in addition or without regard to judgment or settlement means in that second sentence. That, it seems to me, kind of places a judgment against you. Well, Your Honor, when it says without regard to judgment or settlement, what it means is that he owes the indemnity. It says your indemnity, and it says, in addition, your indemnity shall extend to the deductible without regard to judgment or settlement. Mr. Bush's argument is that, well, if it doesn't say breach, there has to be a breach. But it's clear that without regard to judgment or settlement means without regard to a breach that causes the judgment or settlement. You take that right from the first sentence, which talks about a breach that results in a judgment or settlement. So the only way . . . Language at its sole cost and expense create an automatic ambiguity under the circumstances. You're reading the third sentence, Your Honor? Right. Because . . . We're talking here about attorney's fees, right? Correct. Each side is entitled to and obviously did hire its own attorneys at its sole cost and expense. Correct, Your Honor. And Warner did it at its sole cost and expense. Well, Warner hired its own attorney's fees because it was a defendant . . . hired its own attorneys because it was a defendant. But what the third sentence is talking about is a suit where only one party is sued, not both. So it says each party is entitled to be notified of any action against the other brought with respect to the song. What that's talking about is when one party, let's say Mr. Pettibone, is sued alone and Warner is not, Warner may have an interest it sees in the case and wants to participate. This is Warner's language. Yeah, the contract was drafted by my client, yes. Can I just ask what was the role of Pettibone during the litigation? Was Warner completely driving the train or was Pettibone present at all or kept up to speed on what was going on with this litigation? It was Mr. Pettibone and Mr. Bush who by agreement were the ones who were leading the defense. We were present and we worked with Mr. Bush throughout. My client could not retain Mr. Bush because Mr. Bush is consistently adverse to my client. We could have used Mr. Pettibone's attorney, my client could have, if there were no conflict, but Mr. Pettibone insisted on using Mr. Bush here and Warner simply couldn't be represented by Mr. Bush. And that was in the district court and the Ninth Circuit? Correct, Your Honor. How much did Proscow charge for its representation here? Well, the fees that were submitted to the district court were, I forget what the exact number was, Your Honor, but it was somewhere in the $500,000 range. And the meter continues to run? Well, we had an appeal in the Ninth Circuit which I primarily argued and Mr. Bush argued the attorney's fees part of it. So did the half a million dollars include the Ninth Circuit? No, Your Honor, that was before the Ninth Circuit. How much did you run up in the Ninth Circuit? I don't know exactly, Your Honor. Don't play games with me. How much did Proscow charge Warner for the Ninth Circuit piece of this litigation? Your Honor, I believe the fees were somewhere in the $150,000 to $200,000 range, but I don't have the exact number. Okay, and what have you run up in this court to date? I don't have the number, Your Honor. I would imagine that at the district court level we spent less than $100,000 because we were able to get the case dismissed on the motion. And what about getting you here before us today? Well, we had to write one brief and prepare for today. Your Honor, we probably spent about 50 to 75 hours on the brief, and I've spent, I don't know, 25 to 30 hours preparing for today. How much did you get per hour? We give this client a discount. My rate is in the 900s. I can't recall exactly what it is. You can't recall exactly what your rate is? No, I do know what my rate is, Your Honor. What I can't recall is exactly what the discount that we give our client here is. So we're looking at about a million dollars in legal fees? Roughly. I think it's a little bit less if you were to include everything including this appeal and this case. So we're supposed to be looking at this clause to shift a million dollars in legal fees to an artist who's looking for $500,000 in royalties as consequences of a claim that had no merit? A meritless claim, is that right? Well, it was a claim that we were able to defeat, Your Honor, and yes, at the end of the day— Correct, Your Honor, but the basis of the claim was that it was Mr. Pettibone who had committed copyright infringement and Warner was necessarily drawn in, and that is why— Well, if he had won, I mean, if you had lost the case, Warner would lose money. Warner would lose 50 percent of the royalty stream, I am told. Well, we would have lost whatever the damages were in that case for copyright infringement, and Mr. Pettibone would have had to indemnify Warner for that under the first sentence of Section 8.1. But this song, Vogue, was a revenue producer for Warner, correct? Correct, Your Honor, and Mr. Pettibone has earned royalties from the song. It was a moneymaker for both of you. Absolutely. Now, you know, for a clause like this to generate that result seems to me quite unusual. But, Your Honor, if I could— It's stated conservatively. I'm sorry. Your Honor, if I could urge the Court to look at the Bradley case, which is a New York Court of Appeals case, and it's in the party's briefs, and in that case, if we're talking about fairness, the Court said, Look, if you want to talk about unequal bargaining or fairness, if the indemnitor had reservations as to the scope of the agreement, he should have insisted on a different indemnification clause or refused to give his assent to the contract. And that's the New York Court of Appeals speaking case. I don't think any reasonable person would read this clause to be an indemnification clause that generates that result. You drafted it. I agree, Your Honor, but I respectfully disagree with that position because I don't— I'm doing my job asking you a few questions. And I'm doing my job— Can I ask you— Yes. As you said, Mr. Bush assisted you in the litigation in the district court in the Ninth Circuit. Did his clients seek indemnity from you for his fees? No. We worked . . . I would say I worked with Mr. Bush in the district court. Mr. Bush took the lead in the district court. Proskauer, as representing Warner and Madonna, participated in the defense. We gave the lead to Mr. Bush there. When it came to the Ninth Circuit, I took the lead on the argument because we had to overturn or get the Ninth Circuit not to adopt a Sixth Circuit case. I got it. The question is, does it go both ways here? Why wouldn't Mr. Pettibone be able to seek from you half of Bush's fees in representing you jointly? Does the indemnity agreement provide for that too? Well, not in this circumstance because what the indemnity is talking about in Sentence 1 is did Mr. Pettibone breach his reps and warranties. His reps and warranties include not committing copyright infringement. That was the allegation in the district court lawsuit that Mr. Pettibone had sampled, copied from a previous record. That was the rep and warranty that he was alleged to have breached in the case. Now, we proved that there was no copyright infringement. The second sentence is the indemnity that Mr. Pettibone provides to Warner, again, because he is the one who brings the song to Warner, in other words. If Mr. Pettibone is going to be sued for copying, so is Warner. If Mr. Pettibone is found to have copied, well, Warner will be in the defendant's seat as well. And if Pettibone is found liable, Warner will be because we are selling the song that Mr. Pettibone wrote. And that's the genesis of the indemnification clause, and that's why it is set up that way. But the second indemnification, the additional indemnification, is limited to the deductible here. So once Warner is covered by its insurance, it's not asking Mr. Pettibone to cover its legal fees. If the court doesn't have anything. Why not? I'm sorry? Are you entitled to the . . . it's your position that the deductible caps the amount of attorney's fees you're entitled to ask for? Correct, Your Honor, under the second sentence. I get it. Thank you very much. Your Honor. Gorsh. Yes, just a few things. In the hearing before the district court, the district judge said he's read the Section 8.1 a hundred times and he can't figure out what it means. He said that. And it is true. It is written as a riddle. And it is impossible to make Mr. Pettibone, it is unfair to make Mr. Pettibone figure out what Warner had. And I truly believe in my heart that Warner wrote this ambiguously on purpose to try to use this very argument if there ever was a lawsuit. And I can tell you if you look at paragraph 7.1, the last sentence, there was a preexisting matter when they signed this agreement where Warner said specifically that with respect to the claim that was being raised back then in 1990, Mr. Pettibone will indemnify them fully and hold them harmless. They knew how to write that language. They knew it. But they didn't write it here. They wrote this gobbledygook that you could read a thousand times and not figure out what it means. And very importantly, it is irreconcilable that third sentence, Mr. Kaplan says that the third sentence only applies where one party is sued. But guess what? If you look at the first sentence also, the first sentence could be one party being sued. It does not fit. And if there is no way for Mr. Pettibone to ever not owe fees, then that third sentence becomes irrelevant, meaningless. And that's not the case. And again, yes? Assuming we agree with you, do we vacate the decision and send it back for evidentiary proceedings or do we reverse it and say you win? The latter. And this is why. Because the Court was correct when it says, and the law is very clear, that in order for there to be a fee indemnification here, indemnification, the law is very clear, and I have it here, that the language must clearly require indemnification from its language and context. That's the Luna case. So while it says it's not necessarily unmistakable clarity, it must clearly require indemnification from its language and context, it must be sufficiently clear and unambiguous, and it must be strictly construed. And there is no way this language fits within those legal principles at all. And they could have written that it applies to claims and allegations easily. They did it elsewhere in the agreement. They didn't do it here. And that's the key. And the first sentence says breach. And as far as the second sentence is concerned, it could mean without regard to either a judgment or a settlement. It could mean that they're holding the fees pending a judgment or settlement. There's all kinds of things that this could mean, and Mr. Sagalow in his declaration says it. So this language without, and I'll say one last thing. There is no case that I have found where a court has required someone to indemnify someone for claims or allegations without it saying that. And this doesn't say it. Thank you, Your Honor. Thank you both. We will reserve decision. We are going to take a brief recess and let the next case get ready, and folks, and then we will come back and hear argument in night, First Amendment versus Donald J. Trump. Court is in recess.